

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG:SEF                                    *271 Cadman Plaza East*
F.#2010R00578                              *Brooklyn, New York 11201*

                                           October 24, 2011

<u>By ECF and Hand Delivery</u>

The Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

            Re:  United States v. Michael Virtuoso
                 <u>Criminal Docket No. 06-800 (S-2) (SLT)</u>

Dear Judge Townes:

            The government respectfully submits this response in
opposition to the defendant's motion in limine seeking to
preclude the government from introducing evidence of the
defendant's other acts of loansharking at tomorrow's supervised
release revocation hearing.  For the reasons set forth below, the
defendant's motion should be denied and the evidence should be
admitted to prove, <u>inter alia</u>, the defendant's motive, intent,
opportunity and common scheme or plan.[1]

                        <u>Background</u>

            As the Court is aware, the defendant pled guilty in
August 2008 to racketeering, including predicate acts of
extortionate collection of credit and illegal gambling.  He was
sentenced principally to 32 months in prison and three years'
supervised release.  The defendant is now charged with violating
the conditions of his supervised release by, <u>inter alia</u>,
continuing to engage in loansharking.

_____

            [1]   The defendant's motion was filed under Docket No. 11-
CR-508, the related proceeding concerning the substantive
criminal charges of extortionate collection of credit in
violation of 18 U.S.C. § 894.  The supervised release revocation
proceeding concerns the defendant's prior conviction before this
Court in <u>United States v. Virtuoso</u>, 06-CR800 (S-2) (SLT).

At the violation hearing, the government intends to offer a series of consensual recordings made by a cooperating witness ("CW"), who is a former organized crime associate, during the period June 2005 through December 2005.  In the recordings, the CW recorded John Capolino, an organized crime associate who was both a loanshark victim of the defendant Virtuoso and a co-conspirator with him in the defendant's loanshark business.[2]  In brief, the recordings reflect the following:

- On June 16, 2005, Capolino told the CW that he owed the defendant more than $20,000, and that he was paying the defendant a usurious interest rate of approximately three percentage points per week on that debt.  Capolino stated that he had used some of the money for gambling debts, and some of it to issue extortionate loans to other victims. Capolino stated:  "Ahh I got jammed up with him [Virtuoso]. . . .  He was to give it out like it was nothing, I was fuckin' gambling. . . . Partying, anytime I needed money I go there . . . I was getting money, putting it out to other people."  Capolino indicated that, after Virtuoso visited him and said "we're gonna take a walk," Capolino reached out for protection from Michael Catapano, who was then a captain in the Colombo family.  He then paid only "knock down" money, or payments that were to reduce the principal of the loan, to a third individual, who brought the money to Virtuoso.

- On July 29, 2005, Capolino described an incident in which the defendant came to his home after midnight after Capolino fell behind in his loanshark payments.

- On September 14, 2005, the CW accompanied Capolino to make a loanshark payment to the defendant at the defendant's butcher shop.  Following the encounter, the defendant called Capolino on his

---

[2]    In July 2010, Capolino was convicted, after trial, of extortionate collection of credit conspiracy, in violation of 18 U.S.C. § 894(a)(1).  United States v. Capolino, 08-R-240 (S-9) (BMC).  At trial in that case, the evidence – including the referenced recordings – showed that the defendant Virtuoso was Capolino's co-conspirator.

cellular phone to inform him that he owed an additional $100.

- On December 29, 2005, Capolino informed the CW by phone that he had attempted to borrow money from his union benefit funds in order to catch up on his belated loanshark payments to the defendant. Capolino stated that the union had denied his request and he therefore lacked the funds to pay the defendant.  He expressed concern that the defendant would "go berserk."

Significantly, the recordings were made at or about the same time that the defendant initiated the extensions of credit at issue in this revocation proceeding.  Accordingly, the recordings serve as direct evidence of, inter alia, the defendant's motive, intent, opportunity and common scheme or plan, and the government seeks to introduce them for that purpose.

Argument

The defendant seeks to preclude the recordings on the grounds that they purportedly constitute inadmissible evidence of the defendant's reputation as a loanshark.  The defense thus proceeds on the misconception that the government seeks to introduce the recordings to prove the defendant's reputation in the community.  That is untrue.  Although, as the defense acknowledges, reputation evidence is admissible in certain circumstances, pursuant to 18 U.S.C. § 894(c), to prove that the defendant's actions "in fact carried an express or implicit threat,"[3] the evidence is admissible here on the additional grounds that it constitutes direct proof of the defendant's

---

[3]     The defendant's contention that the government has failed to meet the requirements of Section 894 for introducing reputation evidence is, in any event, premature.  Should the government seek to introduce reputation evidence pursuant to Section 894(c), then it will meet the requirements of that section.  Cf. United States v. Dennis, 625 F.2d 782, 800 (8th Cir. 1980) ("If a man makes vaguely menacing statements, aware that he is commonly known as a violent man, then it is a reasonable inference that he intends to instill fear. . . .  It is unlikely that the defendant is unaware of his own reputation for violence; reputation, by definition, reflects general knowledge in the community, and, if anyone is a member of the relevant community, it is the defendant himself.").

motive, intent, opportunity and common scheme or plan.  Cf. Fed.
R. Evid. 404(b); United States v. Levy, 731 F.2d 997, 1002 (2d
Cir. 1984) ("We have adopted the inclusionary or positive
approach to [404(b)]; as long as the evidence is not offered to
prove propensity, it is admissible.").[4]

     "Extortion" for the purposes of Title 18, United States
Code, Section 894, "includes any act or statement which
constitutes a threat if it instills fear in the person to whom
[the threat is] directed or [is] reasonably calculated to do so
in light of the surrounding circumstances."  United States v.
Pacione, 738 F.2d 567, 572 (2d Cir. 1984) (quoting United States
v. Sears, 544 F.2d 585, 587 (2d Cir. 1976)) (modification
omitted); see also United States v. Natale, 526 F.2d 1160, 1168
(2d Cir. 1975); United States v. Curcio, 310 F. Supp. 351, 357
(D. Conn. 1970); 18 U.S.C. § 891(7).  As the Second Circuit has
observed, the rationale behind this broad definition of extortion
is best understood against the backdrop of Congress's efforts to
combat organized crime.  Pacione, 738 F.2d at 570.  Due to the
nature of La Cosa Nostra ("LCN") families, "loan sharks connected
with organized crime rarely used force, or even made explicit
threats to do so, because they found it unnecessary.  A loan
shark's victim knew all too well that if he did not pay, a likely
result would be bodily harm to him or his family."  Id.

     Accordingly, in order to prove that Virtuoso violated
18 U.S.C. § 894(a), the government is required to prove that the
defendant "intended to take actions which reasonably would induce
fear in an ordinary person."  United States v. Natale,  526 F.2d
1160, 1168 (2d Cir. 1975); United States v. Scotti, 47 F.3d 1237,
1244-45 (2d Cir. 1995).  In evaluating whether conduct comprises
an extortionate threat, all of the surrounding circumstances must
be considered.  Significantly, "it is the conduct of the
defendant, not the victim's individual state of mind, to which
the thrust of the statute is directed."  Natale, 526 F.2d at 1168
("Convictions have been sustained under this statute even where
the person threatened has denied at trial that he was put in fear
by the threat."); see also United States v. Polizzi, 801 F.2d
1543, 1548 (9th Cir. 1986) (observing that it is the defendant's

---

     [4]     Notably, the Federal Rules of Evidence do not apply in
proceedings concerning the revocation of probation or supervised
release.  See Fed. R. Evid. 1101(d)(3); see also United States v.
Aspinall, 389 F.3d 332, 344 (2d Cir. 2004) (noting that "in
revocation proceedings the normal evidentiary constrictions
should be relaxed").

actions, "not the mental state produced in the debtor" that is the focus for the jury).

Accordingly, the defendant's motive and intent are directly at issue with respect to the charged use of extortionate means to collect extensions of credit. The fact that the defendant extorted Capolino during the same period of time that he was extorting the victims in this case, even as he also conspired with Capolino to extort others, is probative of the fact that Virtuoso intended to convey to his victims, implicitly or otherwise, that they would be harmed if they did not repay their debts to him. See United States v. Lombardozzi, 491 F.3d 61, 78 (2d Cir. 2007) (affirming admission of evidence of prior loansharking activity pursuant to Rule 404(b) as proof of intent, absence of mistake and identity where defendant was charged with extortionate extension and collection of credit); United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988) (uncharged crimes or "other" acts evidence is admissible pursuant to Rule 404(b) if relevant to the issue of intent). Similarly, the fact that the defendant was engaged in loansharking during this period with respect to others is evidence that the credit he sought to collect from the victims in this case was also extended as part of his loansharking business.

## Conclusion

For the foregoing reasons, the government respectfully requests that the defendant's motion in limine be denied and that the government be permitted to introduce the above-described consensual recordings as evidence of the defendant's motive, intent, opportunity and common scheme or plan.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: _____/s/_____
    Stephen E. Frank
    Assistant U.S. Attorney
    (718) 254-6143

cc:  Joseph DiBenedetto, Esq. (by ECF)
     Clerk of Court (SLT) (by ECF)